2020 UT App 33

## THE UTAH COURT OF APPEALS

JAMES SEAMONS AND KADI SEAMONS,
Appellees,
*v.*
LARRY G. WISER AND PATRICIA B. WISER,
Appellants.

Opinion
No. 20180902-CA
Filed March 5, 2020

First District Court, Logan Department
The Honorable Thomas Willmore
No. 150100401

Jonathan E. Jenkins, Attorney for Appellants

Seth J. Tait, Attorney for Appellees

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES KATE APPLEBY and DIANA HAGEN concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     Larry and Patricia Wiser appeal the district court's reformation of a warranty deed in favor of James and Kadi Seamons. We affirm.

BACKGROUND

¶2     Lawrence and Billie Lou Wiser owned and operated a dairy farm in Lewiston, Utah, for decades. In 1980, Lawrence and Billie Lou subdivided a 219.5-foot-wide parcel of the farm (the Wiser Parcel) and conveyed it to their son, Larry, and his wife, Patricia, for their home. Immediately east of Larry and Patricia's home was an empty seventy-five-foot-wide lot (the Strip), and just east of that was a separate parcel on which Lawrence and Billie Lou's home stood (the Seamons Parcel). *See*

*infra* Appendix. The Strip was included in the 1980 legal description of the Wiser Parcel. However, the 1980 legal description was inconsistent with the property Larry and Patricia were actually using for their home and yard. The western side of the Wiser Parcel closely abutted the side of the home and excluded a driveway and other improvements to the west of the home. The Strip, on the other hand, was being used as part of the farm. Thus, in 2000, a series of quitclaim deeds (the 2000 Deeds) were recorded to shift Larry and Patricia's property approximately thirty-five feet to the west to encompass the improved property west of their home. This left a gap of land thirty-five feet wide (the Gap) between the Wiser Parcel and the Seamons parcel that was recorded in the name of Lawrence and Billie Lou's trust.

¶3    By 2006, Lawrence and Billie Lou's other son, Daniel, was running the farm, but he had become tired of dairy farming and wanted to get out of the business. So in 2006, Lawrence and Billie Lou sold their farm and home to James and Kadi Seamons. The warranty deed conveying the property to the Seamonses (the Warranty Deed) excluded the Wiser Parcel from the Seamonses' property and described that parcel as including the entire Strip. At that time, the Strip, which bordered the rest of the farm land on the north side, was being used in the farm operations. The Strip was set apart from each home by a fence that ran around the north and west sides of Lawrence and Billie Lou's yard, along the south side of the Strip, and then around the east, north, and west sides of Larry and Patricia's yard. However, at the time of the sale, Lawrence and Daniel informed James Seamons that the eastern boundary of the Wiser Parcel was somewhere in the middle of the Strip, and there was a survey stake in the middle of the Strip. After purchasing the farm, the Seamonses used the entire Strip up until 2010, when Larry moved the fence on the east side of his property to the middle of the Strip in line with the survey stake, which he understood to be the true eastern boundary of the Wiser Parcel. From that time forward, the Wisers occupied the western part of

the Strip and the Seamonses occupied the Gap property on the eastern part of the Strip.

¶4    In 2014, the Seamonses commissioned a survey of the properties, at which point they learned that the Gap was still titled in the name of Lawrence and Billie Lou's trust. The Seamonses asked Lawrence to sign a quitclaim deed transferring the Gap to them, based on their understanding at the time of the purchase in 2006. But instead, Lawrence transferred the Gap to Larry and Patricia. Thereafter, the Seamonses filed suit, requesting that the court reform the Warranty Deed to include the Gap[1] in the description of their property based on mutual mistake.[2]

¶5    The Wisers moved the court to dismiss the Seamonses' suit based on laches and the expiration of the statute of limitations. The court declined to rule on the motion at the outset but permitted the Wisers to address the factual basis of their argument in the course of trial.

¶6    The district court held a bench trial in June 2018, and most of the evidence was received by proffer. The Seamonses proffered the expert testimony of a surveyor (Mr. Hansen) to explain the discrepancy between the description of the Wiser Parcel used in the 2000 Deeds and the description used in the Warranty Deed. He discovered that the Cache County Tax Roll records contained "an erroneous legal description" of the Wiser Parcel "that did not match the legal description in the chain of title for" the Wiser Parcel and that the Warranty Deed used that erroneous description rather than the description in the 2000

---

1. The Seamonses' initial complaint requested that the Warranty Deed be reformed to include the entire Strip, but they later amended the complaint to claim only the Gap.

2. The Seamonses also raised additional causes of action that were dismissed by the court and are not relevant to this appeal.

Deeds. The Wisers, on the other hand, proffered expert testimony of another surveyor (Mr. Christensen) who would testify that the 2000 Deeds were erroneous in failing to include the Gap in the legal description of the Wiser Parcel.

¶7     Following trial, the district court entered findings of fact and conclusions of law in which it found "that based upon the proffered testimony of all parties, the Wisers intended to sell and the [Seamonses] intended to purchase all the farm and older house excluding Larry and Patricia Wiser's parcel." It further found "that the parties understood that the portions of the Strip east of the stake were being purchased by the" Seamonses and that "the intent of the parties was to convey . . . the eastern half of the Strip[] to the [Seamonses] and to exclude only [the Wiser Parcel] which was to remain owned by Larry and Patricia." The court found that the legal description of the Wiser Parcel used in the Warranty Deed "does not exist anywhere in the chain of title for" the Wiser Parcel and therefore arose from an erroneous legal description in the Cache County Tax Roll records. In doing so, the court "place[d] great weight on the testimony of Mr. Hansen" and observed that the Wisers "did not put forth any expert evidence disputing" that testimony. In ruling on the question of mutual mistake, the court "place[d] great weight on the facts that the [Seamonses] have occupied and used the Gap . . . since the time they purchased the farm in 2006 and up to the present day" and that "the entire Strip was being used and occupied" by Daniel as part of the farm property at the time the farm was sold to the Seamonses. The court therefore concluded that there was "clear and convincing evidence that the parties were mutually mistaken as to the legal description for [the Wiser Parcel] contained in the 2006 Warranty Deed which caused the Gap and that it was the [parties'] intent to convey the Gap to the [Seamonses]."

¶8     In light of the mutual mistake, the court ordered that the Warranty Deed be reformed to describe the Wiser Parcel in accordance with the 2000 Deeds' description so as to convey the Gap to the Seamonses as originally intended. The court's

findings of fact and conclusions of law did not include any findings related to the Wisers' motion to dismiss on laches and statute-of-limitations grounds, and the court did not issue a ruling on that motion. The Wisers now appeal.

ISSUES AND STANDARDS OF REVIEW

¶9     The Wisers assert that the district court erred in failing to rule on their motion to dismiss. Whether the district court made "findings of fact on all material issues . . . presents a question of law, which we review for correctness." *Vandermeide v. Young*, 2013 UT App 31, ¶ 7, 296 P.3d 787.

¶10     The Wisers next assert that the court erred in reforming the Warranty Deed based on mutual mistake. In reviewing a district court's determination that a deed should be reformed for mutual mistake, we review the court's findings of fact for clear error and its conclusions of law for correctness. *See Peterson v. Pierce*, 2019 UT App 48, ¶ 10, 440 P.3d 833.

¶11     Finally, the Wisers assert that the court erred in discounting their proffered expert testimony. We review a court's findings of fact for clear error, *Rand v. KOA Campgrounds*, 2014 UT App 246, ¶ 5, 338 P.3d 222, and will reverse only if an erroneous finding was reasonably likely to have affected the outcome of the case, *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 22, 70 P.3d 35.

ANALYSIS

I. The Wisers Waived Their Argument That the Court Failed to Rule on Their Motion to Dismiss.

¶12     The Wisers first argue that the district court erred in not ruling or making findings on the laches and statute-of-limitations arguments raised in their motion to dismiss. While it is apparent that the court did not rule on these issues, the Wisers

waived their challenge to the court's inaction by failing to bring the court's omission to its attention.

¶13    To preserve an issue for appeal, the issue must be raised "specifically" and "in such a way as to afford [the district court judge] an opportunity to correct the alleged error." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 56, 99 P.3d 801. Thus, when a party claims that the district court failed to rule on a material issue, the party must "object to the court's findings and conclusions on this basis" or "file a post-judgment motion asking the court to make additional findings." *Vandermeide v. Young,* 2013 UT App 31, ¶ 9, 296 P.3d 787. By failing to either object or file a post-judgment motion bringing this issue to the district court's attention, the Wisers therefore waived their argument regarding the motion to dismiss.

¶14    The Wisers argue that they preserved this issue by filing their motion to dismiss, addressing the matter at trial, and asserting arguments relating to the motion in their trial brief. But the issue raised on appeal is not that the court erred in denying the Wisers' motion to dismiss but that it erred in failing to issue a ruling on that motion. The Wisers' actions preserved their laches and statute-of-limitations arguments but did not preserve their claim that the court failed to rule on those arguments. By failing to object or file a post-judgment motion pointing out the lack of findings and conclusions relating to the motion to dismiss, the Wisers never alerted the district court to the error they now allege on appeal. Because the district court was not afforded "an opportunity to correct the alleged error"—i.e., its failure to rule on the motion to dismiss—the issue was not preserved. *See 438 Main St.*, 2004 UT 72, ¶ 56. Accordingly, we decline to address this issue further.

## II. The Court Did Not Err in Reforming the Deed Based on Mutual Mistake.

¶15    The Wisers next assert that the district court erred in reforming the Warranty Deed. They raise two arguments in

support of their position. First, they assert that the court could not consider extrinsic evidence of intent without first finding that the Warranty Deed was ambiguous. They maintain that the Warranty Deed was not ambiguous because the explicit language of the parcel description included the entire Strip in its legal definition of the excluded Wiser Parcel. Second, they assert that a number of the court's factual findings were insufficient to support its determination that the Seamonses established mutual mistake by clear and convincing evidence.[3] We address each argument in turn.

A.    Parol Evidence May Be Used to Show Mistake of Fact Without a Finding of Ambiguity.

¶16    The description of the Wiser Parcel included in the Warranty Deed explicitly described the entire Strip. However, the district court found that this description was the result of the parties' mutual mistake because the Strip was regularly used for farm operations both before and after the farm was sold to the Seamonses and because the parties intended to convey to the Seamonses all the land that was not part of the Wiser Parcel. The Wisers assert that the district court erred in considering this extrinsic evidence of mutual mistake because the language in the Warranty Deed was unambiguous.

¶17    In contract interpretation, the parol evidence rule excludes extrinsic evidence offered "for the purpose of varying or adding to the terms of an integrated contract." *Union Bank v. Swenson*, 707 P.2d 663, 665 (Utah 1985) (quotation simplified). The same principle applies to interpreting the language of a

---

3. The Wisers characterize this argument as a legal challenge to the court's mutual mistake ruling. However, their entire argument on this point consists of pointing to alleged inconsistencies between the evidence and the court's findings. We therefore construe this issue as a challenge to the sufficiency of the evidence and review it for clear error.

deed. *Neeley v. Kelsch*, 600 P.2d 979, 981 (Utah 1979) ("The general rule is that parol evidence may not contradict, vary, or add to deeds."). Thus, in interpreting the language of a contract or deed, we resort to extrinsic evidence only if the contract language is ambiguous. *See Plateau Mining Co. v. Utah Div. of State Lands & Forestry*, 802 P.2d 720, 725 (Utah 1990). But in this case, the dispute did not involve differences as to how the deed should be interpreted. Rather, the Seamonses' reformation action was premised on their argument that the parties made a mutual mistake by including the Gap in the Warranty Deed's legal description of the Wiser Parcel.

¶18    "[M]utual mistake [is] an exception" to the parol evidence rule, and extrinsic evidence may be examined "even if the property description is definite and certain." *Neeley*, 600 P.2d at 981; *see also, e.g., Jensen v. Manila Corp. of the Church of Jesus Christ of Latter-day Saints*, 565 P.2d 63, 64 (Utah 1977) (holding that "parol evidence is admissible in an action for reformation[] to show the writing did not conform to the intent of the parties" and rejecting the contention that "parol evidence must be excluded if the description of the property is definite and certain"); *Janke v. Beckstead*, 332 P.2d 933, 934 (Utah 1958) (holding that an ambiguity is not necessary to admission of parol evidence where reformation "is sought on the ground of mutual mistake or fraud" (citing 45 Am. Jur. *Reformation of Instruments* § 113)); *E & H Land Ltd. v. Farmington City*, 2014 UT App 237, ¶ 25, 336 P.3d 1077 (holding that extrinsic evidence is admissible to show mutual mistake); *Vandermeide v. Young*, 2013 UT App 31, ¶ 12, 296 P.3d 787 (explaining that when mutual mistake is at issue, "extrinsic evidence is admissible to assist in determining the intent of the parties" (quotation simplified)); *Wolf Mountain Resorts, LC v. ASC Utah, Inc.*, 2011 UT App 425, ¶ 11, 268 P.3d 872 ("In an exception to the general rule disallowing parol evidence to interpret contracts, parol evidence is admissible to demonstrate that a mutual mistake resulted in a document which does not accurately reflect the intent of the parties." (quotation simplified)). *But see Percival v. Cooper*, 525 P.2d 41, 42 (Utah 1974) ("Where the description of premises conveyed in a

deed is definite, certain, and unambiguous, extrinsic evidence cannot be introduced to show that it was the intention of the grantor to convey a different tract or that he did not intend to convey all of the land described.").[4] Thus, the district court did not err in examining extrinsic evidence presented by the Seamonses in support of their mutual-mistake argument.

B.    The Court's Findings Were Not Clearly Erroneous.

¶19    The Wisers next assert that the district court erred in concluding that the Warranty Deed should be reformed due to the parties' mutual mistake. "Reformation of a deed is appropriate where the terms of the written instrument are mistaken in that they do not show the true intent of the agreement between the parties." *Vandermeide v. Young*, 2013 UT App 31, ¶ 12, 296 P.3d 787 (quotation simplified). When a party seeks to reform a deed based on mutual mistake, that party "has the burden of proving by clear and convincing evidence that there was a mutual mistake of fact." *Id.* (quotation simplified). The Wisers assert that the Seamonses did not meet their burden and contest two of the district court's findings of fact: that the Strip was being used for farming at the time of the sale and that the parties intended for the Gap to be included in the 2006 sale.

---

4. *Percival v. Cooper*, 525 P.2d 41 (Utah 1974), is the only case the Wisers cite in support of their contention that an ambiguity in the deed must be found before parol evidence of intent may be used to show mutual mistake. But the *Percival* holding was directly contradicted by the supreme court's holding in *Jensen v. Manila Corp. of the Church of Jesus Christ of Latter-day Saints*, 565 P.2d 63 (Utah 1977), three years later, *see id.* at 64 (explicitly rejecting the contention that "parol evidence must be excluded if the description of the property is definite and certain"); was inconsistent with well-settled law even at the time it was issued, *see Percival*, 525 P.2d at 43 & n.1 (Crockett, J., dissenting); and has never been relied on or even cited in any other Utah case.

¶20 We will not set aside a court's factual findings unless they are clearly erroneous. *See id.* ¶ 14. "To make such a showing, a party challenging a finding of fact must demonstrate that the evidence is legally insufficient to support the finding when viewing the evidence in a light most favorable to the court below." *Austin v. Bingham*, 2014 UT App 15, ¶ 12, 319 P.3d 738 (quotation simplified). In other words, the party "must do more than merely reargue the evidence supporting his or her position." *Id.* (quotation simplified).

¶21 In challenging the district court's findings, the Wisers have not met their burden of persuasion on appeal. Rather than confronting the evidence supporting the district court's findings, the Wisers have presented "carefully selected facts and excerpts from the record in support" of their position and point to evidence that could potentially support different findings. *See id.* (quotation simplified).

¶22 For example, in challenging the court's finding that Daniel Wiser was using the Strip for farm operations at the time of the sale, they point to deposition testimony in which Daniel stated that he did not remember exactly what the Strip was being used for at the time of the sale. But Daniel also testified, "When I had sold it to [James Seamons], . . . I had young heifers running out there . . . . I don't remember exactly what I was doing to that strip right then or—well, I know I was running heifers through this end, so I kind of used it as a pasture somewhat." And while some of his testimony was equivocal regarding the exact use of the Strip at that time, he clearly testified that the Strip was used for farming while he was managing the farm, and he never suggested that the Strip was being put to any other use at the time the Seamonses purchased the farm. Thus, this evidence supports the district court's finding that the Strip was being used in farm operations at the time of the sale.

¶23 Similarly, in challenging the court's finding of intent, the Wisers ignore the proffered evidence that supports the district

court's finding and reargue the facts by pointing to evidence that supports their position. For example, they challenge the court's finding that "James Seamons understood from his conversations with Daniel and Lawrence Wiser that the eastern boundary of [the Wiser Parcel] was approximately located in the middle of the strip" by citing Lawrence Wiser's denial that this conversation occurred. But the Seamonses proffered testimony from James Seamons that this conversation did occur. It was the district court's prerogative to weigh this conflicting evidence. *See Lunt v. Lance*, 2008 UT App 192, ¶ 19, 186 P.3d 978. The fact that there was evidence contradicting the court's finding does not make the finding clearly erroneous when sufficient evidence has been submitted that supports the court's finding. *See Hale v. Big H Constr., Inc.*, 2012 UT App 283, ¶ 60, 288 P.3d 1046 ("When . . . there is conflicting evidence, we defer to the trial court as the factfinder. The existence of conflicting evidence does not give rise to clear error as long as evidence supports the trial court's decision." (quotation simplified)).

¶24 The Wisers also assert that a finding that the parties intended for the Gap to be included in the purchase was inconsistent with the Seamonses' own representations because when they first filed suit, the Seamonses represented that they believed they were entitled to the entire Strip and then later limited their claim to only the Gap property. But the Seamonses do not assert that the parties intended to include any particular portion of the Strip in the sale of the farm. Rather, they contend that they intended to include all the property that was *not* part of the Wiser Parcel in the sale and that they understood that property to include some portion of the Strip. The fact that the Seamonses first asserted they owned the entire Strip and later asserted they owned only the Gap is not inconsistent with mutual mistake as to what was actually included in the Wiser Parcel. The Seamonses may not have realized that the western part of the Strip was legally part of the Wiser Parcel, but that is not inconsistent with a belief that they had purchased everything that was not part of the Wiser Parcel.

¶25 In short, the Wisers have failed to establish that any of the court's factual findings regarding mutual mistake were clearly erroneous. We therefore defer to the court's findings of fact.

### III. The Court Did Not Exceed Its Discretion in Discounting the Wisers' Proffered Expert Testimony.

¶26 Finally, the Wisers take issue with the district court's finding that they "did not put forth any expert evidence disputing Mr. Hansen's testimony and conclusions."[5] The Wisers assert that this finding is clearly erroneous because they proffered expert testimony from Mr. Christensen indicating that "there is no error in the 2006 warranty deed."

¶27 Read in context, however, this finding is not clearly erroneous, because it appears to be limited to Mr. Hansen's testimony and conclusions regarding the "creation of the Gap." The full finding reads,

> The Court heard *testimony concerning the creation of the Gap* from Clint Hansen, a licensed surveyor. The Court places great weight on the testimony of Mr. Hansen and the Court notes that [the Wisers] did not put forth any expert evidence disputing Mr. Hansen's testimony and conclusions. The Court finds that the Gap was caused because of an error in the legal description for [the Wiser Parcel] that was introduced into the legal description noted on the Cache County Tax Roll for [the Wiser

---

5. The Wisers variously characterize their argument as a challenge to the accuracy of the factual finding and a challenge to the adequacy of the court's findings. To the extent that the Wisers challenge the adequacy of the findings, we do not address their argument because they did not raise this argument before the district court and it is therefore not preserved. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶¶ 50–51, 99 P.3d 801.

Parcel] in the year 2000. Mr. Hansen discovered that in 2000 the Defendants executed and recorded a series of deeds which shifted the location of [the Wiser Parcel] approximately 35 feet to the west (the "2000 Adjustment"). The Cache County Tax Roll records adopted an erroneous legal description out of the 2000 Adjustment that did not match the legal description in the chain of title for [the Wiser Parcel].

(Emphasis added.) This finding explicitly states that it concerns Mr. Hansen's testimony about how the Gap was created, and the entire paragraph focuses on this specific aspect of Mr. Hansen's testimony. Taken out of this context, the court's finding about the Wisers' lack of expert testimony could be read as erroneous. But read in this context, we agree with the Seamonses that the court appears to be commenting on the lack of "expert evidence disputing Mr. Hansen's testimony and conclusions" "*concerning the creation of the Gap.*" (Emphasis added.) Although the Wisers did assert that Mr. Christensen would testify that it was the 2000 Deeds, rather than the Warranty Deed, that contained an erroneous description of the Wiser Parcel, they did not assert that Mr. Christensen had a different explanation for how the Gap came to be.

¶28 But even if we were to accept the Wisers' assertion that the court's finding was erroneous, the error does not justify reversal because it "was sufficiently inconsequential that there is no reasonable likelihood that it affected the outcome of the case." *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 22, 70 P.3d 35. Based on all the proffered evidence, the court found that the description of the Wiser Parcel in the Warranty Deed was the result of mutual mistake. This finding implicitly rejects Mr. Christensen's proffered opinion that there was no error in the Warranty Deed. Although the court relied on Mr. Hansen's testimony to explain the Gap, it relied primarily on other evidence of the parties' intent to determine that the Warranty

Deed's inclusion of the Gap in its description of the Wiser Parcel was erroneous. Specifically, the court pointed to the Wisers' "desire to sell and [the Seamonses'] desire to buy all the farm property; [the Seamonses'] farming and use [of] the Gap property after the sale; the location of the stake or marker along the road; and, [Larry] placing a fence running north from the stake." The Wisers have not explained why they believe there was a reasonable likelihood that the court would have made a different finding regarding mutual mistake in the absence of the allegedly erroneous finding regarding their lack of expert testimony. And in light of the other evidence the court found persuasive, we are not convinced that any error in this particular finding affected the court's ruling. Thus, even if we agreed that the finding was erroneous, remanding the case to correct that finding would be a "meaningless exercise." *Uhrhahn Constr. & Design, Inc. v. Hopkins*, 2008 UT App 41, ¶ 22, 179 P.3d 808.

CONCLUSION

¶29    Because the Wisers did not preserve their argument that the court failed to rule on their laches and statute-of-limitations arguments, we do not consider that argument on appeal. We also reject the Wisers' argument that the court was required to find an ambiguity in the Warranty Deed to reform it based on mutual mistake. Because the evidence was sufficient to support the court's finding of mutual mistake, we defer to that finding. Further, because any error in the court's finding regarding the Wisers' lack of expert testimony was inconsequential, reversal is not justified on that basis. Accordingly, we affirm the court's decision to reform the Warranty Deed.

_____

APPENDIX

Note: These diagrams are not drawn to scale and are provided only for illustrative purposes.

